# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JILL ADLER, individually and on behalf of All others similarly situated, | **MEMORANDUM DECISION & ORDER** |
| **Plaintiff,** | **Case No 2:21-cv-00141** |
| **v.** | **Chief Magistrate Judge Dustin B. Pead** |
| ALL HOURS PLUMBING DRAIN CLEANING 24-7-365 LLC, | |
| **Defendant.** | |

## INTRODUCTION

Plaintiff Jill Adler ("Adler") brings this action against Defendant All Hours Plumbing Drain Cleaning 24-7-365 LLC ("All Hours"), seeking class-wide relief under the Telephone Consumer Protection Act of 1991 ("TCPA").[1] The TCPA prohibits calls that "include[] or introduce[] an advertisement or constitute[] telemarketing, using … an artificial or prerecorded voice"[2] to a number assigned to a cellular telephone service[3] without "prior express written consent[.]"[4]

Currently pending before the court[5] is Adler's Motion for Class Certification and

---

[1] ECF No. 2; 47 U.S.C. § 227

[2] 47 C.F.R. § 64.1200(a)(2).

[3] 47 C.F.R. § 64.1200(a)(iii); *see also* 47 U.S.C. § 227(b)(1)(iii).

[4] 47 C.F.R. § 64.1200(a)(2).

[5] ECF No. 16, Consent to Jurisdiction by Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73.

Appointment of Class Counsel ("Motion").[6] For the reasons stated below, Plaintiff's Motion for Class Certification is **GRANTED** subject to modification of the proposed class.

## BACKGROUND

All Hours provides plumbing, heating, air, and fireplace services and repair to customers in Salt Lake City, Utah and the greater Salt Lake City area.[7] To market its services, Defendant uses various channels, including print, home shows, direct mail, and social media.[8] In doing so, All Hours utilizes the "ServiceTitan" customer relationship management platform to manage its customer information.[9] As part of the ServiceTitan platform, Defendant maintains customer profiles for Plaintiff and each putative Class member that includes the type of account, telephone number, email address, and home address.[10]

In January 2021, during a company marketing meeting, Chuck Staszkiewicz ("Staszkiewicz"), one of All Hours' owners, came up with the idea of marketing to consumers through the use of prerecorded messages.[11] Ryan Rooney ("Rooney"), All Hours' Digital Marketing Specialist, was instructed by Staszkiewicz to locate a prerecorded voice transmission

---

[6] ECF No. 47, Plaintiff's Motion for Class Certification and Appointment of Counsel. *See also*, ECF No. 55, Defendant's Opposition to Motion for Summary Judgment; ECF No. 58, Plaintiff's Reply in Support of Plaintiff's Motion for Class Certification and Appointment of Counsel; ECF No. 64, Plaintiff's Notice of Supplemental Authority; ECF No. 67, Defendant's Objections to Proposed Memorandum Decision and Order.

[7] ECF No. 47 at pg. 2 (citing deposition transcript of Defendant's Rule 30(b)(6) designee, Dana Staszkiewicz ("Staszkiewicz Dep."); ECF No. 47-1, at 15:20-24).

[8] *Id.* at pg. 2 (citing Staszkiewicz Dep. at 16:17-24).

[9] *Id.* at pg. 2 (citing Staszkiewicz Dep. at 8:16-24).

[10] *Id.* at pg. 2 (citing Staszkiewicz Dep. at 24:13-17; 25:13-16; Ex. 2 to Staszkiewicz Dep.).

[11] *Id.* at pg. 3 (citing Staszkiewicz Dep. at 17:9-20; deposition transcript of Defendant's employee, Ryan Rooney ("Rooney Dep."), ECF No. 47-3, at 10:2-11:5).

service, which Mr. Rooney did, preforming a Google search that led him to the company VoiceShot, LLC ("VoiceShot").[12]

The robocall at issue in this matter was recorded by one of Defendant's employees, Steve Olson ("Olson"), on his cellular telephone.[13] All Hours' Marketing Department prepared the script for the message.[14] After Mr. Olson recorded the message, he sent it to Mr. Rooney to upload into the VoiceShot platform, which Mr. Rooney did through use of the platform's web portal.[15] Mr. Rooney also uploaded a list of 4,999 telephone numbers and names that were targeted with the prerecorded message.[16] Defendant maintains a copy of the customer list it uploaded onto the VoiceShot platform within its Google drive.[17]

On February 22, 2021, Mr. Rooney launched the robocall campaign by clicking a button on the VoiceShot platform that caused it to transmit the prerecorded message to each of the uploaded telephone numbers.[18] The prerecorded message sent to the Plaintiff and putative Class members stated:

> Hi, Steve here with All Hours Plumbing Heating and Air. With the changing temperatures, have you found yourself being a thermostat disc jockey with no audience? We wanna stop playing twist and shout with the thermostat and help you make that tax refund that you may have received last for years by investing in your biggest purchase: your home. Now is perfect time to update your home's furnace and air conditioning. This week only we have a special offer for our premium clients. The first 50 furnace and AC combo

[12] *Id.* at pg. 3 (citing Staszkiewicz Dep. at 12:14-16; 18:23-19:3; Rooney Dep. at 7:20 – 8:1).

[13] *Id.* at pg. 3 (citing Staszkiewicz Dep. at 25:17-24; deposition transcript of Defendant's employee, Steve Olson ("Olson Dep."), ECF No. 47-2, at 9:18-10:1).

[14] *Id.* at pg. 3 (citing Staszkiewicz Dep. at 26:4-6; Olson Dep. at 10:2-5).

[15] *Id.* at pg. 3 (citing Rooney Dep. at 15:11-23).

[16] *Id.* at pg. 3 (citing Staszkiewicz Dep. at 37:12-38:3; Rooney Dep. at 16:11-17:19).

[17] *Id.* at pg. 3 (citing Staszkiewicz Dep. at 42:19-23).

[18] *Id.* at pg. 3 (citing Rooney Dep. at 17:20-18:4; Staszkiewicz Dep. at 43:9-17).

installations scheduled and completed will receive a PlayStation 5. So call us today to learn more and book your appointment today at 801-997-9591. That's 801-997-9591, and you have an awesome, great day.[19]

All of the 4,999 telephone numbers were sent the same message with the intended purpose of marketing Defendant's services.[20] Defendant does not dispute that Plaintiff received the prerecorded message on February 22, 2021.[21] Plaintiff received the prerecorded message on her cellular telephone number.[22]

In response to a subpoena issued by Plaintiff, VoiceShot produced a spreadsheet containing a list of the successfully delivered prerecorded voice calls sent by All Hours to Plaintiff and the Class members using the VoiceShot Platform.[23] As reflected by VoiceShot's computer generated call records, on February 22, 2021, Defendant successfully placed 3,347 prerecorded calls to 3,347 unique telephone numbers.[24] Defendant disputes the accuracy of VoiceShot's records, noting that many of the calls which VoiceShot states were successfully delivered to voicemail were less than the fifty-one second length of the prerecorded message at issue.[25]

The roughly 4,999 telephone numbers that were targeted with the prerecorded message are telephone numbers of All Hours' prior customers obtained through Defendant's website or over

---

[19] *Id.* at pg. 4 (citing Staszkiewicz Dep. at 20:7-21; Ex. 1 to Staszkiewicz Dep.).

[20] *Id.* at pg. 4 (citing Staszkiewicz Dep. at 26:12-17; 28:13-29:10).

[21] *Id.* at pg. 4 (citing Staszkiewicz Dep. at 32:3-6; 43:9-14).

[22] ECF No. 2, Plaintiff's Complaint at pg. 5 ¶ 23.

[23] *Id.* at pg. 4 (citing Declaration of David Carriveau, records custodian of VoiceShot, LLC ("VoiceShot Dec."); ECF No. 47-5, at ¶6).

[24] *Id.* at pg. 4 (citing VoiceShot Dec. at ¶11).

[25] ECF No. 55 at pg. 5-8, Defendant's Opposition to Motion for Class Certification.

the phone.[26] The list of target telephone numbers was compiled by Andrea Tran ("Tran"), a member of Defendant's Marketing Department.[27] Tran utilized the ServiceTitan platform to apply filters that removed all telephone numbers associated with any business customer and searched for all individual customers who had an open service during the last year, thereby resulting in approximately 4,999 customer telephone numbers.[28] Defendant does not have a disclosure from any of the 4,999 individuals it tried to contact with a robocall that authorized Defendant to call with a prerecorded telemarketing message.[29]

## PROCEDURAL HISTORY

Adler filed suit on March 8, 2021.[30] All Hours filed its Answer on April 16, 2021.[31]

On March 29, 2022, All Hours moved to add a counterclaim for damages in quantum meruit.[32] The court, however, concluded that Defendant failed to establish good cause for amendment and denied All Hours' motion to add counterclaim.[33]

On May 2, 2022, Adler filed her Motion to Certify Class.[34] Through her Motion, Adler seeks to certify the following class:

---

[26] *Id.* at pg. 4 (citing Staszkiewicz Dep. at 32:12-19; citing Staszkiewicz Dep. at 32:20-25).

[27] *Id.* at pg. 4 (citing Staszkiewicz Dep. at 21:2-7).

[28] *Id.* at pg. 5 (citing Staszkiewicz Dep. at 21:8-23); *see also* Pl's Reply, ECF No. 58, at pg. 2 (citing Transcript of Continued Deposition of Defendant's Rule 30(b)(6) designee, Dana Staszkiewicz ("Cont. Staszkiewicz Dep.") at 6:9-14 (confirming Defendant "pulled out any commercial accounts"); *id.* at 7:19-20 ("Q: The ultimate goal was however to pull out commercial accounts, correct? A: Correct.")).

[29] *Id.* at pg. 5 (citing Staszkiewicz Dep. at 50:10-16).

[30] ECF No. 2, Plaintiff's Complaint.

[31] ECF No. 14, Defendant's Answer.

[32] ECF No. 41, Defendant's Motion for Leave to Add Counterclaim.

[33] ECF No. 52, Memorandum Decision.

[34] ECF No. 47, Plaintiff's Motion for Class Certification and Appointment of Class Counsel.

All persons in the United States who on or about February 22, 2021 were delivered the following prerecorded voice call by Defendant through the VoiceShot platform:

"Hi, Steve here with All Hours Plumbing Heating and Air. With the changing temperatures, have you found yourself being a thermostat disc jockey with no audience? We wanna stop playing twist and shout with the thermostat and help you make that tax refund that you may have received last for years by investing in your biggest purchase: your home. Now is perfect time to update your home's furnace and air conditioning. This week only we have a special offer for our premium clients. The first 50 furnace and AC combo installations scheduled and completed will receive a PlayStation 5. So call us today to learn more and book your appointment today at 801-997-9591. That's 801-997-9591, and you have an awesome, great day."[35]

Plaintiff estimates this class could consist of up to 4,999 members.[36]

All Hours filed its Response in Opposition to Plaintiff's Motion on June 21, 2022,[37] and Adler filed her Reply on July 12, 2022.[38] The court held oral argument on September 27, 2022.[39]

## LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[40] A class action allows one or more plaintiffs to file claims on behalf of a larger group under circumstances where the named plaintiff "possess[es] the

---

[35] ECF No. 47 at pg. 1.

[36] ECF No. 47 at 4; Dana Staskiewicz Deposition (Staszkiewicz Depo., 26:12-17).

[37] ECF No. 55, Defendant's Opposition to Motion for Class Certification.

[38] ECF No. 58, Plaintiff's Reply in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel.

[39] ECF No. 66, Minute Entry.

[40] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 180 L. Ed. 374 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-01, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)).

same interest and suffer[s] the same injury" as the rest of the class.[41] To justify this shift from the standard rule, a party seeking certification must satisfy the elements of Federal Rule of Civil Procedure 23(a).[42] Rule 23, however, "does not set forth a mere pleading standard."[43] Rather, as the party seeking class certification, Plaintiff has the burden of "affirmatively demonstrat[ing] compliance with Rule 23."[44] The "decision whether to grant or deny class certification involves intensely practical considerations . . . and therefore belongs within the discretion of the trial court."[45] The court should certify a class only if, "after rigorous analysis," it concludes "that the prerequisites of Rule 23[] have been satisfied."[46]

Pursuant to Federal Rule 23(a), individuals may litigate on behalf of a class only if:

(1) the class is so numerous that joinder of all members is impracticable (numerosity);

(2) there are questions of law or fact common to the class (commonality);

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and

(4) the representative parties will fairly and adequately protect the interests of the class (adequacy).[47]

---

[41] *Id.* at 348-49 (internal citations and quotation marks omitted).

[42] Fed. R. Civ. P. 23(a).

[43] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) (internal quotation marks and citation omitted).

[44] *Id.* (quoting *Wal-Mart Stores*, 564 U.S. at 350).

[45] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) (quotation marks and citations omitted).

[46] *Comcast*, 569 U.S. at 33 (citation omitted).

[47] Fed. R. Civ. P. 23(a)(1-4).

A party seeking class certification under Rule 23 must demonstrate that all four requirements are clearly met.[48] Once a party establishes all four requirements, the party must then show that the suit is maintainable as a class action under "one of the three categories of suits set forth in Rule 23(b)."[49] Here, Adler seeks certification under Rule 23(b)(3) which requires the court to find that: " [1] questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."[50]

## DISCUSSION

The court first addresses the Rule 23(a) requirements, before turning to Rule 23(b)(3). To obtain class certification under Rule 23(a), Adler must show numerosity, commonality, typicality and adequacy.[51]  For the reasons stated, the court concludes that Adler satisfies her burden to certify a class more narrowly defined than the one she proposes and that is limited to cellular telephone numbers.

## I.   Adler Has Shown That She Meets The Requirements For Class Certification Under Rule 23(a).

Rule 23(a) permits a member of a class to sue as a representative party on behalf of all members only if:

> (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3)

---

[48] *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Reed v. Bowen,* 849 F.2d 1307, 1309) (10th Cir. 1988)).

[49] *Shook v. El Paso County.,* 386 F.3d 963, 971 (10th Cir. 2005) (citing *Adamson v. Bowen,* 855 F.2d 668, 675 (10th Cir. 1988)).

[50] Fed. R. Civ. P. 23(b)(3).

[51] Fed. R. Civ. P. 23(a).

the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[52]

To meet her burden under Rule 23(a), Adler must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."[53] To determine if Adler has met her burden, the court "must accept the substantive allegations of the complaint as true[.]"[54] In doing so the court is not, however, "limited to the pleadings [and it] may 'probe behind the pleadings and examine the facts and evidence in the case.'"[55] "[A]ctual, not presumed, conformance with Rule 23(a)" is required.[56]

### 1. Numerosity

Under Rule 23(a)(1), the party seeking certification has the burden to establish that "the class is so numerous that joinder of all members is impracticable."[57] While "there is no set formula[,]"[58] the moving party generally "must produce some evidence or otherwise establish by reasonable estimate the number of class members why may be involved."[59] Because numerosity

---

[52] Fed. R. Civ. P. 23(a)(1)-(4).

[53] *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart Stores*, 564 U.S. at 350) (emphasis in original).

[54] *Tripp v. Berman & Rabin P.A.*, 310 F.R.D. 499, 503 (D. Kan. 2015) (quotation marks and citations omitted).

[55] *Id.*, 310 F.R.D. at 503 (quoting *Tabor* 703 F.3d at 1227-28) (quotation marks and citations omitted).

[56] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

[57] Fed. R. Civ. P. 23(a)(1).

[58] *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1215 (10th Cir. 2014) (internal quotation marks and citation omitted).

[59] *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 373 (D. Utah 2020) (quoting *Tripp,* 310 F.R.D. at 504).

is a "fact-specific inquiry," the court has "wide latitude" to determine if it is met.[60] The plaintiff is "not required to plead or prove the actual size of the class, and the court may rely on 'common sense assumptions' in evaluating numerosity."[61]

To meet her burden, Adler relies on the VoiceShot Call Logs, the VoiceShot Declaration, and All Hours' deposition testimony.[62] All Hours testified that it attempted to transmit the same prerecorded messages to 4,999 telephone numbers belonging to its non-business customers.[63] In response to a subpoena issued by Adler, VoiceShot produced a spreadsheet containing a list of the successfully delivered prerecorded voice calls sent by All Hours using the VoiceShot Platform.[64] This spreadsheet contains 3,347 unique telephone numbers that VoiceShot declares All Hours successfully transmitted the prerecorded message to on February 22, 2021.[65]

While All Hours objects to the reliability and accuracy of VoiceShot's records and contends that portions of VoiceShot's Declaration contains hearsay, the court concludes that Adler adequately provides a "reasonable estimate [of] the number of class members who may be involved."[66] Given then large number of calls that successfully transmitted the prerecorded

---

[60] *Trevizo,* 455 F.3d at 1162.

[61] *Banks v. Cent. Refrigerated Servs*., No. 2:16-CV-356-DAK, 2017 U.S. Dist. LEXIS 67423, at *20 (D. Utah May 2, 2017) (quoting *Ditty v. Check Rite, Ltd*., 182 F.R.D. 639, 641 (D. Utah 1998)); *see also Miller v. Basic Resch., LLC*, 285 F.R.D. 647, 653 (D. Utah 2010) ("Courts use common sense assumptions to support a finding of numerosity.") (citing *Ditty*, 182 F.R.D. at 641)).

[62] ECF No. 47 at pg. 12.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Lawrence*, 336 F.R.D. at 373 (D. Utah 2020) (quoting *Tripp*, 310 F.R.D. at 504).

message, and the prevalence of cellular telephone numbers, the court concludes "the class is so numerous that joinder of all members is impracticable."[67]

Accordingly, Adler satisfies the numerosity.

### 2. Commonality

Under Rule 23(a)(2) a plaintiff demonstrates commonality by establishing that there are "questions of law or fact common to [each] class."[68] The focus of commonality "is not so much on whether there exist common *questions*, but rather on 'the capacity of a classwide proceeding to generate common *answers* apt to drive resolution of the litigation.'"[69] A single common question may satisfy this requirement.[70]

Here, the court concludes Adler has identified common questions to all class members likely "to generate common answers apt to drive the resolution of litigation."[71] Specifically, Adler identifies three common questions: (1) whether calls were made by or on behalf Defendant to Plaintiff and the Class members via the transmission of prerecorded messages; (2) whether Defendant secured the requisite consent to place such calls; and (3) whether Defendant knowingly

---

[67] Fed. R. Civ. P. 23(a)(1). *see also Head v. Citibank, N.A.,* 340 F.R.D. 145, 150 (D. Ariz. 2022) ("the Court is confident based on general knowledge and common sense that joinder would be impracticable.") (*citing Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019) ("[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable.") (citation omitted)); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) ("Courts, additionally, have held that '[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'") (quoting *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)).

[68] *Tripp*, 310 F.R.D. at 505 (quoting Fed. R. Civ. P. Rule 23(a)(2)) (alteration in original).

[69] *Naylor Farms, Inc. v. Chaparral Energy, LLC,* 923 F.3d 779, 789 (10th Cir. 2019) (*citing Wal-Mart Stores,* 564 U.S. at 349-50).

[70] *Id.* at 359 (emphasis in original).

[71] *Wal-Mart Stores*, 564 U.S. at 350.

and willfully violated the TCPA.[72] These three common questions will "provide common answers to legal and factual questions" for all class members.[73] Whether All Hours used an artificial or prerecorded voice will be answered using evidence of All Hour's conduct, and will provide the same answer resolving an issue for the whole class.[74]

Accordingly, Adler has met her burden to meet the commonality requirement.

### 3. Typicality

Under Rule 23(a)(3), plaintiff must demonstrate that her "claims . . . are typical of the claims . . . of the class."[75] "[L]ike commonality, typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[76] That said, typicality does "not require that every member of the class

---

[72] ECF No. 47 at pg. 9.

[73] *Lavigne v. First Cmty. Bancshares, Inc*, 2018 U.S. Dist. LEXIS 94055, at *10 (D.N.M. June 5, 2018) (citing *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 309 (S.D. Cal. 2015) (concluding "the factual situation for all the class members here is the same, that is, defendant called third parties on their cellular telephone number via an ATDS and/or prerecorded voice without prior express consent after defendant was on notice that it was calling a third party.")); *see also Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949, at *11 (C.D. Cal. Jan. 29, 2014) ("What steps Defendant took to comply with TCPA, and whether it can be held to have negligently or willfully violated the TCPA when it took those steps, are factual and legal issues common to all class members.").

[74] *See, e.g., Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 292 (D. Utah Sept, 21, 2021) ("*Snap I*") (in a TCPA class "[w]hether [defendant] used an artificial or prerecorded voice will be answered using evidence of [defendant's] conduct, and will provide the same answer resolving an issue for the whole class."); *Knapper*, 329 F.R.D. at 242 (in a TCPA class "[w]hether Defendant used an ATDS or an artificial or prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke.") (internal quotation marks and citations omitted).

[75] Fed. R. Civ. P. 23(a)(3).

[76] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) (citation omitted).

share a fact situation identical to that of the named plaintiff."[77] Typicality is met "so long as the claims of the class representative and class members are based on the same legal or remedial theory."[78]

Here, Adler's claims are typical of a class of individuals who received the prerecorded message on their cellular telephone number and are likely "based on the same legal or remedial theory."[79] Thus, the court concludes that Plaintiff satisfies the typicality requirement.

### 4. Adequacy of Representation

The last requirement of Rule 23(a) is that the class representative "fairly and adequately protect the interests of the class."[80] This "factors in competency and conflicts of class counsel,"[81] and requires that the class representative and their counsel (1) not have any "conflicts of interest with other class members," and (2) "prosecute the action vigorously on behalf of the class[.]"[82]

Under the first adequacy prong, a conflict may exist where the class representative "put[s] [her] own interests above those of the class."[83]  In this action, Adler maintains that "her interests are squarely aligned with those of the Class because, like the rest of the Class, Plaintiff claims that Defendant violated her rights under the TCPA by placing unsolicited calls."[84] Adler further

---

[77] *Colo. Cross Disability Coal.*, 765 F.3d at 1216 (citation omitted).

[78] *Id.* (citation omitted).

[79] *Id.*

[80] Fed. R. Civ. P. 23(a)(4).

[81] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

[82] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (citations omitted).

[83] *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006).

[84] ECF No. 47 at pg. 11.

maintains that her interests are not antagonistic to those of the Class and understands her role as a class representative.[85]

To satisfy the adequacy requirement's second prong, Adler maintains that she "is willing to devote time and resources to this matter."[86] Adler has already been deposed by All Hours.

Similarly, Adler's counsel represents that they "have extensive experience in the area of consumer rights and class action litigation[,] [t]hey have litigated multiple cases nationally[,] have the resources necessary to conduct litigation of this nature[, and] have been appointed as lead class counsel in several cases."[87] As a result, Adler demonstrates that she and her counsel will adequately protect the interests of the class and meets the adequacy requirement.

Having concluded that Plaintiff satisfied each element of Rule 23(a), the court now turns to the requirements of Rule 23(b)(3).

## II. <u>Adler Has Shown That She Meets The Requirements For Class Certification Under Rule 23(b)(3).</u>

Under Rule 23(b)(3), Adler must demonstrate "[1] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[88] That is, "class status is appropriate as long as plaintiffs can establish an aggregation of legal and factual issues, the uniform treatment of which is superior to ordinary one-on-one litigation."[89]

---

[85] *Id*. (citing deposition transcript of Plaintiff Jill Adler ("Adler Dep.") at 41:6-22; 44:5-8).

[86] *Id*.

[87] ECF No. 47 at pg. 11 (citing declarations of Manuel S. Hiraldo and Ignacio J. Hiraldo, ECF No. 47-6).

[88] Fed. R. Civ. P. 23(b)(3).

[89] *CGC Holding Co., LLC v Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014).

Both parties also address ascertainability as a requirement prior to certifying a class.[90] In short, this prerequisite ensures the class is defined so that members are identifiable by reference to objective characteristics.[91] Although the Tenth Circuit has not formally recognized ascertainability as a separate requirement, the court addresses the issue as part of the Rule 23(b)(3) analysis.[92] The court begins by addressing Rule 23(b)(3)'s predominance and superiority elements, before addressing the parties' ascertainability arguments.

### 1. Predominance

While the commonality and predominance inquiries are similar, "the predominance criterion is far more demanding[.]"[93] This inquiry "regularly presents the greatest obstacle to class certification," because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[94] To determine if class issues predominate over individual issues, the court "characterize[s] the issues in the case as common or not, and then weigh[s] which issues predominate."[95] This is done by "considering how the class intends to answer factual and legal

---

[90] *See* ECF No. 47 at pgs. 15-16; ECF No. 55 at pgs. 18-22.

[91] *See Snap I,* 339 F.R.D. at 296 (citing *Lavigne,* 2018 U.S. Dist. LEXIS 94055, at *17) (citing *Rhodes v. Olson Assocs., P.C.,* 83 F. Supp. 3d 1096, 1111-12 (D. Colo. 2014) (quoting *manual for Complex Litigation (Fourth)* § 21, 222 (2004)).

[92] *Shook,* 386 F.3d at 972  (noting "the lack of identifiability is a factor that may defeat Rule 23(b)(3) classification").

[93] *Amchem,* 521 U.S. at 624 (citation omitted).

[94] *CGC Holding,* 773 F.3d at 1087.

[95] *Id.*

questions to prove its claim-and the extent to which the evidence needed to do so is common or individual."[96]

In this case the court finds that class issues predominate over individual issues for a narrowed class consisting of those individuals who received the prerecorded message on their cellular telephones. In so concluding, the court first identifies "the elements of the underlying cause[s] of action,"—a TCPA claim based on prerecorded or artificial voice that introduced or included an advertisement or constituted telemarketing—before analyzing whether the issues presented are susceptible to resolution with common or individualized evidence or legal determinations.[97]

To prevail on her TCPA claim, the elements plaintiff must prove are: "(1) the defendant called plaintiff's cellular telephone (2) using . . . an [] prerecorded voice (3) without the plaintiff's prior express consent."[98] Further if the prerecorded message "included or introduced an advertisement or constitute[d] telemarketing"[99], All Hours required "prior express written consent"[100] before placing the calls.

---

[96] *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (brackets, ellipses, and citation omitted).

[97] *CGC Holding*, 773 F.3d at 1088.

[98] *Asher v. Quicken Loans, Inc.*, No. 2:17-cv-1203, 2019 U.S. Dist. LEXIS 4146, at *2-3 (D. Utah Jan. 8, 2019) (citation omitted); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373, 132 S. Ct. 740, 181 L. Ed. 2d 881 (citing 47 U.S.C. § 227(b)(1)(A)) (stating the TCPA "makes it unlawful to use . . . an artificial or prerecorded voice message, without the prior express consent of the called party, to call any . . . cellular telephone[.]").

[98] 47 C.F.R. § 64.1200(a)(2).

[99] *Id*.

[100] *Id.*; *see also* 47 C.F.R. § 64.1200(f)(9) (listing requirements of "prior express written consent").

First, whether All Hours called an individual's telephone with the prerecorded message can be established through common evidence, namely All Hours' list of who it attempted to call with the message and the VoiceShot records and declaration demonstrating which individuals received the message.[101] Further, the issue of whether a telephone number is a cellular telephone does not predominate and this issue can be determined through a claims administration process.[102]

Second, whether the calls used "an artificial or prerecorded voice" is an issue common to each class member because it can be resolved based on facts only related to All Hours and whether it used prerecorded voice messages.[103] This too will be established through common evidence. The issue will not depend on individualized facts or evidence concerning the putative class members.

Third, whether the prerecorded message "included or introduced an advertisement or constituted telemarketing"[104] can be determined using common evidence, including the wording of the prerecorded message itself and All Hours' testimony regarding the purpose of the message.

---

[101] *Snap I,* 339 F.R.D. at 277 (citing *Braver v. Northstar Alarm Services, LLC*, 329 F.R.D. 320, 331 (W.D. Oklahoma 2018) (concluding whether "every class member received a call" was an issue in common); *Lavigne*, 2018 U.S. Dist. LEXIS 94055, at *17 (concluding there was predominance where the TCPA "class members appear to be in the same factual situation, and the class is likely to fail or succeed on the merits (such as whether class members expressly revoked consent) on the same common evidence, i.e., Defendants' business records.")).

[102] *See Wesley v. Snap Fin., LLC,* 341 F.R.D. 72, 78 (D. Utah 2022) ("*Snap II")*( determination of class membership can be done during the claims administration process.); *Krakauer v. Dish Network, LLC*, 2017 U.S. Dist. LEXIS 117713, at *11 (M.D.N.C. July 27, 2017) ("[w]hether a claimant is a class member is a question that can be more appropriately, fairly, and efficiently resolved through a claims administration process as authorized by Rule 23.").

[103] *Snap I*, 339 F.R.D. at 297 ("the second element is an issue common to each class member because it can be resolved based on facts only related to [defendant] and whether it used prerecorded voice messages.").

[104] 47 C.F.R. § 64.1200(a)(2)

Finally, the issue of consent does not predominate. If the prerecorded message included or introduced an advertisement or constituted telemarketing, All Hours required "prior express written consent" before placing the calls.[105] This question can be determined using common evidence as demonstrated in Adler's Motion.[106]

Accordingly, the court finds that predominance is satisfied.

### 2. Superiority

In addition to predominance, Rule 23(b)(3) requires a plaintiff to "show that a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"[107] "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[108] There are four, non-exhaustive factors relevant to this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (D) the likely difficulties in managing a class action.[109]

---

[105] 47 C.F.R. § 64.1200(f)(9).

[106] ECF No. 47 at pgs. 12-13; *see George v. Shamrock Saloon II, LLC*, 2019 U.S. Dist. LEXIS 133884, at *22 (S.D.N.Y. Aug. 7, 2019), *Report and Recommendation adopted by George v. Shamrock Saloon II LLC,* 2020 U.S. Dist. LEXIS 5646, at *17 (S.D.N.Y. Jan. 13, 2020); *Bennett v. GoDaddy.com LLC*, 2019 U.S. Dist. LEXIS 59766, at *77-78 (D. C. Ariz. April 8, 2019) (finding predominance because of "express written consent" requirement); *Trenz v. On-line Adm'rs, Inc*., 2017 U.S. Dist. LEXIS 199984, 2017 WL 6539019, at *8 (C. D. Cal. Sept. 25, 2017) (rejecting defendants; argument that "significant individualized inquiries" would be required on the issue of prior express written consent).

[107] *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (quoting Fed. R. Civ. P. 23(b)(3)).

[108] *Amchem*, 521 U.S. at 617.

[109] Fed. R. Civ. P. 23(b)(3)(A)-(D); *see Menocal*, 882 F.3d at 915 n.3 (noting that "[a]lthough Rule 23(b)(3) states that these factors are pertinent to both superiority and predominance, most courts analyze

Most relevant to the superiority analysis "is whether class certification would result in case management issues that render the proceedings less fair and efficient than other available forums for adjudicating the class members' claims."[110]

Applying these factors, Adler demonstrates that a class action presents a superior method to litigate this TCPA claim:

> The first factor weighs in favor of superiority. [Adler] asserts the putative class members' claims arise from the same standardized conduct and result in uniform damages calculated on a prerecorded voice message basis….The similarity of the putative class members' claims supports this factor because "no one member of a TCPA class has an interest in controlling the prosecution of the action."….The second and third factors also favor a finding of superiority. Neither party has indicated there is any ongoing litigation concerning [All Hours'] alleged TCPA violations by or against any class member. Without any evidence to the contrary, this factor supports resolving [Adler's] claim through a class action because this case can resolve [All Hours'] liability under [Adler's] TCPA theory without conflicting rulings or impediments from other litigation. As to the third factor, neither party disputes the desirability of concentrating the litigation of this TCPA claim in the current forum….The fourth and final factor also weighs in favor of finding [Adler] has satisfied the superiority requirement….[ Adler] asserts this case is manageable because [All Hours'] has already provided its call logs as a starting point for identifying potential class members.[111]

Thus, the court thus finds that superiority is met.

---

these factors solely in determining whether a class suit will be a superior method of litigation.") (quotation marks, brackets, and citation omitted).

[110] *Rosenberg v. GEICO Gen. Ins. Co.*, 2021 U.S. Dist. LEXIS 210775, at *22 (S.D. Fla. Sep. 21, 2021).

[111] *Snap I*, 339 F.R.D. at 299 (quoting *Knapper*, 329 F.R.D. at 247 (noting that individual litigation would be inefficient and increase litigation costs "particularly so for claims that all stem from the same cause of action and involve common issues."))

### 3. Ascertainability

Several circuits recognize a requirement under Rule 23 that members of a proposed class be ascertainable or "readily identifiable."[112] The Tenth Circuit is not among the circuits that have explicitly addressed an ascertainability requirement, though it has indicated "the lack of identifiability is a factor that may defeat Rule 23(b)(3) classification."[113]

The scope of any ascertainability requirement is the subject of a circuit split, and district courts in this circuit have landed on both sides of the issue.[114] This court need not resolve the district split since class members who received the prerecorded message on their cellular telephones are ascertainable under even the strict standards employed by some circuits. The

---

[112] *In re: Syngenta AG MIR 162 Corn Litig.*, 2016 U.S. Dist. LEXIS 132549, at *1358 (D. Kan. Sept. 26, 2016) (citing *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) (citing cases)).

[113] *Shook*, 386 F.3d at 972 (10th Cir. 2004) (noting "the lack of identifiability is a factor that may defeat Rule 23(b)(3) classification"); *but see Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978) (discussing ascertainability in the context of the numerosity requirement).

[114] *Rodriguez v. Cascade Collections LLC*, No. 2:20-cv-00120-JNP-DBP, 532 F. Supp. 3d 1099, 1122 (D. Utah Mar. 31, 2021) (concluding the weaker test is "the better approach" to determine ascertainability); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 U.S. Dist. LEXIS 40975, at *56 (D. Kan. Feb. 27, 2020) (predicting "that the Tenth Circuit, if confronted with this question, would decline to recognize ascertainability as a separate, unstated requirement of Rule 23 requiring certification movants to satisfy the more stringent ascertainability standard adopted by the Third Circuit"); *In re: Syngenta*, 2016 U.S. Dist. LEXIS 132549, at *1360 (declining defendant's "invitation to apply [the Third Circuit's] standard-one not adopted by the Tenth Circuit-that would preclude certification without a showing that class members may be determined in an administratively feasible manner); *but see Banks v. Cent. Refrigerated Servs., Inc.*, No. 2:16-cv-356-DAK, 2017 U.S. Dist. LEXIS 67423, at *14 (D. Utah May 2, 2017) (citing *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 254 (D.N.M. 2016) (concluding "the majority of district courts in the Tenth Circuit appear to apply the Third Circuit's more stringent standard for ascertainability")).

VoiceShot records provide an efficient starting point to identify these individuals. As discussed above, whether the telephone number was a cellular telephone number can be determined through a claims administration process and therefore the court finds that a narrowed class is ascertainable.

## CONCLUSION

For the reasons stated above, Plaintiff satisfies the requirements under Rule 23 and is entitled to certification of her proposed class. Accordingly, the Motion for Class Certification is **GRANTED**[115] as follows:

The Court **CERTIFIES** and **DEFINES** the following class:

> All persons in the United States who were sent the following prerecorded message on their cellular phone from All Hours Plumbing Drain Cleaning 24-7-365, LLC on or about February 22, 2021:
>
> "Hi, Steve here with All Hours Plumbing Heating and Air. With the changing temperatures, have you found yourself being a thermostat disc jockey with no audience? We wanna stop playing twist and shout with the thermostat and help you make that tax refund that you may have received last for years by investing in your biggest purchase: your home. Now is perfect time to update your home's furnace and air conditioning. This week only we have a special offer for our premium clients. The first 50 furnace and AC combo installations scheduled and completed will receive a PlayStation 5. So call us today to learn more and book your appointment today at 801-997-9591. That's 801-997-9591, and you have an awesome, great day."

The court **APPOINTS** Ignacio J. Hiraldo and Manuel S. Hiraldo as class counsel and Plaintiff Jill Adler is **APPOINTED** as the class representative.

---

[115] ECF No. 47, Plaintiff's Motion for Class Certification and Appointment of Class Counsel.

It is further **ORDERED** that Plaintiff's previously filed Motion for Summary Judgment[116] is **DENIED WITHOUT PREJUDICE.**

It is further **ORDERED** that Plaintiff filed a renewed Motion for Summary Judgment on or before thirty (30) days of this Order.

**SO ORDERED** by the Court this 26th day of October, 2022.

_____
Dustin B. Pead
United States Chief Magistrate Judge

---

[116] ECF No. 60, Plaintiff's Motion for Summary Judgment.